## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL MCCLENTON and** | : | |
| **MUMIA ABU-JAMAL,** | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:20-cv-681** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **JOHN WETZEL,** *et al.*, | : | |
| **Defendants** | : | |

### MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment (Doc. No. 30) filed by Defendants John Wetzel ("Wetzel"), Tabb Bickell ("Bickell"), Michael Wenerowicz ("Wenerowicz"), and Trever Wingard ("Wingard"). The motion is fully briefed and ripe for disposition.

## I.    BACKGROUND

Plaintiffs Michael McClenton and Mumia Abu-Jamal (collectively, "Plaintiffs"), who are currently incarcerated at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI Mahanoy"), initiated the above-captioned action on April 24, 2020 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants. (Doc. No. 1.) Defendants assert that the Department of Corrections ("DOC")'s ban on Timberland and Rocky boots violates their Fourteenth Amendment rights. (*Id.* at 3.) Plaintiffs suggests that their rights have been violated because of the unlawful taking of property without remuneration. (*Id.*)

Plaintiffs maintain further that the ban violates the Equal Protection Clause because: (1) men and women are treated differently and (2) it amounts to collective punishment. (*Id.*) Plaintiffs seek declaratory and injunctive relief, as well as damages. (*Id.* at 4.) Plaintiffs paid the requisite $400.00 filing fee; accordingly, in an Order dated April 24, 2020, the Court directed service of the complaint upon Defendants. (Doc. No. 4.) Defendants filed their answer on June 15, 2020. (Doc. No. 10.) The parties subsequently engaged in discovery, after which Defendants filed their motion for summary judgment.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material

fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden

3

of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL

4

2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[1]

Before February 15, 2018, "inmates were permitted to purchase boots from an Approved Master Commissary List, as an outside purchase pursuant to DC-ADM-815."   (Doc. No. 31 ¶ 1.)   The boots needed to have the following requirements:

> Shoes/boots; dress or work, maximum height of 6" measured from inside to top of shoe, maximum heel height of 1 ¼", no safety toes, no metal shanks, no metal buckles, straps, catches, pocket or fur linings. Maximum $100.00 (limit two pair in any 12 month period).  Purchase must be made by the inmate through established facility procedures from a vendor approved by the facility.

(*Id.* ¶ 2.)   "Timberland and Rocky Boots were available for purchase through the commissary."  (*Id.* ¶ 3.)

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Here, Plaintiffs have filed a response to Defendants' statement of material facts in compliance with M.D. Pa. L.R. 56.1. Accordingly, the Court sets forth the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

On or about February 15, 2018, Corrections Officer Mark Baserman "was brutally murdered by an inmate at SCI-Somerset."  (*Id.* ¶ 4.)  The "assailant killed Baserman by repeatedly kicking him in the head with hard-soled boots."  (*Id.* ¶ 5.)  On February 21, 2018, the DOC "discontinued sales of the Timberland and Rocky boots."  (*Id.* ¶ 6.)[2]  On March 26, 2018, the DOC "issued a memo to inmates informing them the Timberland and Rocky Boots were no longer permitted in the institution effective immediately."  (*Id.* ¶ 7.)  "The ban applied to Timberland and Rocky boots and also 'any other manufacturers procured previously.'"  (*Id.* ¶ 8.)[3]  Inmates were given until May 11, 2018, "to ship the boots home or turn them in." (*Id.* ¶ 10.)  Inmates "were not required to bear the cost of shipping."  (*Id.* ¶ 11.)  Inmates were provided the following options for disposing of the boots: "(1) shipping their boots free of charge, (2) giving their boots to a visitor, or (3) donating the boots to charity."  (*Id.* ¶ 12.)  After May 11, 2018, "boots were considered contraband."  (*Id.* ¶ 13.)[4]

---

[2] Defendants indicate that sales were discontinued in response to the homicide and because the DOC recognized "the role the boots played as a weapon used to murder Officer Baserman."  (Doc. No. 31 ¶ 6.)  Plaintiffs aver that this was an arbitrary and exaggerated response "done for political reasons."  (Doc. No. 34 at 2.)

[3] Defendants assert that the banned boots "presented a particular threat because of the rigidity of their soles."  (Doc. No. 31 ¶ 9.)  Plaintiffs maintain that "this claim has not been established and DOC staffers have claimed otherwise."  (Doc. No. 34 at 2.)

[4] Plaintiffs argue that "boots weren't 'considered' contraband (especially by prisoners), but were declared so by the DOC defendants, as part of [an] 'exaggerated response.'"  (*Id.*)

The memo issued to inmates "made clear that boots issued to inmates at Boot Camp or the Forestry Program were not contraband." (*Id.* ¶ 14.) The boots issued to Forestry inmates are issued "pursuant to Policy 815-Section 1, B, 1," which states:

> An inmate assigned to work a special assignment will be issued clothing in accordance with the requirements of the work assignment and, when appropriate, he/she shall be furnished with suitable protective equipment (fluorescent safety vest, disposable face mask and gloves, protective helmets, goggles, boots, etc.). These items will be maintained by the work supervisor, not in the inmate's cell.

(*Id.* ¶ 15.)[5] The boots issued for forestry inmates "are used only for work outside the perimeter of the institution." (*Id.* ¶ 16.) Inmates "are not permitted to wear or otherwise possess the boots inside the prison." (*Id.*)

Inmates at SCI Cambridge Springs and SCI Muncy "were subject to a boot pilot program, and the memo made clear that the boot pilot program was not affected by the ban." (*Id.* ¶ 17.)[6] The boot pilot program was enacted "because, while DOC Policy required that inmates be issued a pair of standard issued shoes, the only shoes available for female inmates in the commissary were sizes 6-15." (*Id.* ¶ 18.) "A percentage of the inmates had shoe sizes smaller than 6, so an alternative was

---

[5] Plaintiffs dispute their use "unless defendants aver the prisoner labor in [the] Forestry Program is unsupervised by staff members, else such a claim is simply illogical and makes no sense." (*Id.* at 3.)

[6] Plaintiffs dispute the characterization that the boots used in the pilot program "were dissimilar to Timberland and Rocky boots regarding soles." (*Id.*)

required." (*Id.*)  In November 2017, the DOC came up with the pilot program with an approved vendor, ShoeCorp. (*Id.* ¶ 19.)  The program "included the ability to provide less costly state-issued footwear to those female offenders with a foot size smaller than size 6, as well as the potential for an effective alternative to the Black Rocky Boots offered via Commissary purchase to the female offenders." (*Id.*)[7] When the DOC banned Timberland and Rocky boots, "the Shoecorp Boots could not be banned because there was no cost-efficient alternative footwear for inmates with a shoe size smaller than 6." (*Id.* ¶ 20.)  "Only inmates at SCI-Muncy or SCI-Cambridge [S]prings with shoe size smaller than 6 are issued the Shoecorp[] Boot." (*Id.* ¶ 21.)  "All inmates, male or female (size 6 or higher) are issued standard footwear, which includes a choice of oxford style shoes or a sneaker-type hiking boot with a softer sole." (*Id.* ¶ 22.)[8]

## IV.   DISCUSSION

### A.   Due Process Claims

A liberal construction of Plaintiffs' complaint leads the Court to conclude that they are asserting that the DOC's ban on Timberland and Rocky boots violates their

---

[7] Plaintiffs dispute that the alternative is "significantly dissimilar to Timberland/Rocky boots." (*Id.*)

[8] Plaintiffs again dispute that the Shoecorp alternative is "significantly dissimilar to Timberland/Rocky boots." (*Id.*)  They also maintain that paragraph 22 is "false." (*Id.*)

rights under the Fourteenth Amendment's Due Process Clause.  The Court considers such arguments below.

### 1.   Unlawful Taking of Property

As an initial matter, Plaintiffs argue that Defendant Wetzel "denied [their] property rights when he acquiesced in this process of unlawful taking of property without remuneration in violation of the" Fourteenth Amendment.  (Doc. No. 1 ¶ 20.)  However, neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

The United States Court of Appeals for the Third Circuit has held that the DOC's grievance procedure constitutes an adequate post-deprivation remedy.  *See Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).  Pennsylvania state law also provides an adequate remedy for prison officials' unlawful deprivation of inmate property.  *See* 42 Pa. Cons. Stat. Ann. § 8522(b)(3); *see also Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act provides adequate remedy for willful destruction of property).  In their complaint, Plaintiffs assert that they availed themselves of their administrative remedies but received no relief.

(Doc. No. 1 ¶¶ 12-17.)  Thus, an adequate post-deprivation remedy was available to them.  To the extent Plaintiffs assert that their grievances were wrongfully denied, they have not alleged the denial of a federal right.  *See Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009).  Likewise, if dissatisfied with the responses to their grievances, Plaintiffs have a suitable remedy to pursue under the Pennsylvania Tort Claims Act.  *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (noting that "[e]ven if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy").  Thus, Defendants are entitled to summary judgment with respect to Plaintiffs' unlawful taking of property claim under the Fourteenth Amendment.

### 2.   Procedural Due Process

To the extent that Plaintiffs assert that Defendants' promulgation of the ban on Timberland and Rocky boots violates their procedural due process rights, the Court agrees with Defendants that such a claim cannot be maintained.  "Procedural due process is applicable to adjudicative kinds of acts and not to legislative making type acts."  *Bracey v. Price*, No. 09-1662, 2011 WL 2620358, at *7 (W.D. Pa. July 1, 2011) (citing *Marshall v. Sawyer*, 365 F.2d 105, 111 (9th Cir. 1966)).  The Supreme Court of Pennsylvania recently determined that the DOC's boot ban does

not implicate procedural due process principles. *See Sutton v. Bickell*, 220 A.3d 1027, 1032 (Pa. 2019). As the *Sutton* court noted, the DOC's memoranda regarding the ban "set[] forth rules of prospective effect that bind a broad class of individuals in Pennsylvania state prisons. It does not apply existing laws or regulations in a manner that affects only one or several citizens." *Id.* Thus, Defendants' acts in "promulgating the policy did not deprive Plaintiff[s] of a liberty/property interest without affording [them] procedural due process because Plaintiff[s] [were] not entitled to any individualized process in [Defendants'] actions in considering and promulgating" the ban. *Bracey*, 2011 WL 2620358, at *7. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiffs' procedural due process claim.

### 3.   Substantive Due Process

Plaintiffs also advance a substantive due process claim, asserting that Defendants' actions were a "PR gimmick" and an "arbitrary and capricious" act. (Doc. No. 1 ¶ 23.) Plaintiffs' claim is governed by the analysis set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 7 (1987). "[W]hen a prison regulation impinges upon an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological purposes." *Id.* at 87. *Turner* identified the following four (4) factors for a court to consider to determine the reasonableness

of a regulation: (1) "whether the regulation bears a valid, rational connection to a legitimate and neutral government objective"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives." *Id.* at 89-90.

The Third Circuit has observed that *Turner* did not explicitly state which party bears the burden of demonstrating these factors. *See Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Thus, the Third Circuit has developed the following burden-shifting analysis:

> First, the prison has the burden of demonstrating the First *Turner* Factor. This burden is slight, and in certain instances, the connection may be a matter of common sense. Second, if the prison meets its burden under the First *Turner* Factor, then we consider the [Second, Third, and Fourth] *Turner* Factors.

*Id.* Thus, although the prisoner bears the "ultimate burden of persuasion with regard to the reasonableness of a regulation," the prison is first required to "put forward the legitimate governmental interest alleged to justify the regulation and demonstrate that the policy drafters could rationally have seen a connection between the policy and that interest." *Id.* (quoting *Jones v. Brown*, 461 F.3d 353, 360-61 (3d Cir. 2006)).

Under the first factor, Defendants must demonstrate a "valid, rational connection between the prison regulation and the legitimate governmental interest." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc).  Prison officials are afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Based upon the record before it, this Court agrees with the Supreme Court of Pennsylvania, which concluded that "based on the incident in which boots of the style prohibited by the Memorandum contributed to the killing of a prison guard, allowing such boots to remain in the possession of inmates poses a substantial risk to the safety of prison employees and other inmates."  *Sutton*, 220 A.3d at 1034; *see also Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 173 (3d Cir. 2011) (noting that inmates' interests must be balanced against the unique institutional concerns of prisons, including maintaining order and safety).  "[A]n inmate's potential use of Timberland or Rocky boots as a deadly weapon against Department staff is a rational safety reason for the Department's Regional Deputy Secretaries and their supervising Executive Deputy Secretary for Institutional Operations to change the Department's boot-style policy."  *O'Toole v. Pa. Dep't of Corr.*, 196 A.3d 260, 268 (Pa. Commw. Ct. 2018).

13

Under the second factor, the Court must consider whether Plaintiffs "retain alternate means of exercising the circumscribed right." *DeHart*, 227 F.3d at 51. The record before the Court establishes that the DOC offered inmates various ways to dispose of their boots before the boots were declared to be contraband. Inmates were given the following options: (1) shipping the boots outside of the facility; (2) giving them to a visitor; (3) having their boots held by Receiving/Discharge if they would be released by September 1, 2018; and (4) donating them to local organizations or other state agencies. (Doc. No. 32-5 at 2.) Like in *Sutton*, the Court agrees that, because of the availability of these alternatives, the second *Turner* factor favors Defendants. *See Sutton*, 220 A.3d at 1034.

The third factor concerns "the costs that accommodating the right would impose on other inmates, guards, and prison resources generally." *DeHart*, 227 F.3d at 51. The fourth factor considers "whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimus cost to valid penological interests." *Id.* In *Sutton*, the Supreme Court of Pennsylvania concluded that these factors favored the DOC because in order to "accommodate the asserted rights of inmates the Memorandum would have to be rescinded, which in turn would re-impose the safety risks mentioned above; and . . . there is no obvious, ready alternative available to the Department to address such safety concerns while also

14

allowing inmates to retain possession of the type of boots in question." *Sutton*, 220 A.3d at 1034.  The record in the above-captioned case leads the Court to conclude that these factors favor Defendants.

Plaintiffs maintain that the DOC's ban violates their Fourteenth Amendment rights because it amounts to collective punishment and that the "response taken by DOC defendants to the killing of Sgt. Baserman need not to have been their 'boot ban.'" (Doc. No. 34 at 4-10.)  Plaintiffs suggest that the ban was "an 'exaggerated response' within the meaning" of *Turner*.  (*Id.* at 6.)  In support, their point to an email from Michael Clark, the Superintendent of SCI Albion, in which he stated: "Not sure the State boots are much less lethal with their sole."  (Doc. No. 29 at 20.) They suggest that the ban is irrational because the State-issued boots have a "tough, hard-tack sole."  (Doc. No. 34 at 8.)  Plaintiffs' speculations, however, are simply insufficient to create a genuine issue of material fact to survive summary judgment. *See Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *16 (D.N.J. June 27, 2019) (noting that "[u]nsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment").

Moreover, the Court agrees with the *Sutton* court that the ban is not an overreaction on the part of Defendants.  "The violent killing of a corrections employee is undoubtedly among the most serious safety breaches that can occur in

a prison setting, and [Plaintiffs do] not dispute that the boots in question played a role in that occurrence." *Sutton*, 220 A.3d at 1034.  Moreover, there is no authority "suggesting that prisons are required to wait for multiple such incidents to transpire before taking action designed to prevent further violence of the same type." *Id.* Thus, because Plaintiffs have not met their burden of disproving the validity of the DOC's ban on Timberland and Rocky boots, the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiffs' substantive due process claim.

**B.    Equal Protection Claims**

Plaintiff further allege that Defendants' actions in implementing the ban on Timberland and Rocky boots violates their rights under the Equal Protection Clause of the Fourteenth Amendment because "they treated men one way, and treated women another by exempting them from this arbitrary and capricious action." (Doc. No. 1 ¶ 21.)  The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Supreme Court has held that the Equal Protection Clause applies to discrimination on the basis of sex.  *See Reed v. Reed*, 404 U.S. 71, 76 (1971).  "Generally, classifications that distinguish between males and females are subject to heightened scrutiny under the Equal Protection clause and will withstand

16

constitutional challenge only if the classification serves 'important governmental objectives' and is 'substantially related to achievement of those objectives.'" *Guy v. Espinoza*, No. 1:19-cv-498, 2020 WL 309525, at *11 (E.D. Cal. Jan. 21, 2020) (quoting *Craig v. Boren*, 429 U.S. 190, 197 (1976)). "It is unclear, however, whether this heightened scrutiny applies in the prison context or whether, instead, a prison regulation need only be reasonably related to a legitimate penological interest in order to withstand constitutional challenge." *Id.* (citing *Turner*, 482 U.S. at 89).

Even assuming that male and female inmates in the custody of the DOC are similarly situated, Plaintiffs have not demonstrated that a genuine issue of fact exists that would permit a reasonable factfinder to conclude that the ban on Timberland and Rocky boots has violated their rights under the Equal Protection Clause. The ban on such boots, as well as similar boots by other manufacturers, applies to all institutions, not just those housing male inmates. (Doc. No. 32-2 at 2; Doc. No. 32-5 at 2.) Plaintiffs, however, suggest that the ban is irrational because the Shoecorp boot permitted through the pilot program at SCI Muncy and SCI Cambridge Springs has been described as having "soles . . . comparable to those of the Rockies." (Doc. No. 29 at 11.) To the extent such similarities exist, however, the record before the Court demonstrates that the pilot program both serves important governmental objectives and has a rational basis, as the Constitution requires that prison officials

17

"ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The record reflects that the DOC's standard issue shoes were not adequate for the small percentage of female inmates whose shoe size is smaller than 6, and that the Shoecorp boot pilot program was the most cost-effective way to provide adequate footwear to those inmates. (Doc. No. 31 ¶¶ 18, 20.) "Promoting the efficient allocation of prison resources has been recognized as a legitimate governmental interest." *Jewell v. Gonzales*, 420 F. Supp. 2d 406, 427 (W.D. Pa. 2006) (collecting cases). Because there is no genuine issue of material fact with respect to whether Defendants have violated Plaintiffs' equal protection rights by treating male and female inmates differently, the Court will grant summary judgment to Defendants as to this claim as well.

Plaintiffs' complaint also appears to suggest that their equal protection rights have been violated because "those prisoners working in Forestry . . . were deemed exemp[t] from the Memo." (Doc. No. 1 ¶ 10.) The March 26, 2018 memo states: "Inmates who are at [Quehanna Boot Camp] or the Forestry Camp and have been issued a boot or shoe in place of the standard issue state brown boots may retain those items." (Doc. No. 32-2 at 2.) The record, however, reflects that inmates assigned to a special assignment are provided clothing and suitable protective equipment, such as boots, as needed for the work assignment. (Doc. No. 32-4 ¶ 18.)

Such equipment, such as the boots, are maintained by the supervisor, and "inmates are not permitted to wear or otherwise possess the boots inside the prison." (*Id.* ¶¶ 18-19.)  In their response to Defendants' statement of facts, Plaintiffs dispute "their use unless [D]efendants aver the prisoner labor in Forestry Program is unsupervised by staff members, else such a claim is simply illogical and makes no sense." (Doc. No. 34 at 3.)  Again, however, prison officials have a duty to provide adequate clothing to inmates, which would include adequate clothing and other equipment for specific work assignments.  *See Farmer*, 511 U.S. at 832.  Because there is no genuine issue of material fact with respect to whether Defendants have violated Plaintiffs' equal protection rights by permitting forestry inmates to continue using the boots at issue, the Court will grant summary judgment to Defendants as to this claim as well.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 30) will be granted.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: January 19, 2021

19